FLORENCE T. NAKAKUNI #2286
United States Attorney
District of Hawaii

Thomas J. Brady #4472
Chief, Special Crimes Section

Tracy Hino #3202
Assistant U.S. Attorney
Room 6100, PJKK Federal Building
300 Ala Moana Blvd.
Honolulu, Hawaii 96850
Telephone:  (808) 440-9258
Facsimile:  (808) 541-2958
E-mail:  Tracy.Hino@usdoj.gov

Attorneys for Plaintiff,
UNITED STATES OF AMERICA

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAY 19 2014

at 9 o'clock and 25 min A M.
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>       vs.<br><br>KENJI OKAMOTO,<br><br>                    Defendant. | MAG. NO. 14-0466 RLP<br><br>CRIMINAL COMPLAINT;<br>AGENT'S AFFIDAVIT |

## CRIMINAL COMPLAINT

I, the undersigned complainant, being duly sworn, state
the following is true and correct to the best of my knowledge and
belief.

On or about May 17, 2014, in the District of Hawaii, Kenji
Okamoto ("Okamoto"), Defendant herein, within the special
maritime and territorial jurisdiction of the United States, did
assault a flight attendant and by assaulting or intimidating a

flight attendant of the aircraft, interfered with the performance of the duties of the attendant or lessened the ability of the attendant to perform those duties while aboard Delta flight 278, inbound from Osaka Kansai International Airport (KIX) to Honolulu International Airport (HNL).

In violation of Title 49, United States Code, Section 46504, which occurred on May 17, 2014.

I further state that I am a Special Agent of the Federal Bureau of Investigation (FBI) and that this Complaint is based upon the facts set forth in the following affidavit which is attached hereto and made part of this Complaint by reference.

DATED:  Honolulu, Hawaii, May _18th_, 2014.


_____
Necosie M. Wilson
FBI Special Agent


Sworn to before me and
subscribed in my presence,
this 1st day of May, 2014,
at Honolulu, Hawaii.

_____
BARRY M. KURREN
UNITED STATES MAGISTRATE JUDGE

2

## AGENT'S AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Necosie M. Wilson, being duly sworn, hereby depose and state the following:

1. I am a Special Agent ("SA") of the Federal Bureau of Investigation ("FBI"), and have been so employed for approximately 3.5 years. Since 2011, I have been assigned to the Honolulu Field Office of the FBI, where I investigate violations of Federal law, including those violations which occur within the airport environment and on board aircraft. Title 49, United States Code, Section 46501 establishes the Special Aircraft Jurisdiction of the United States and, under Section 46501(2)(D)(i), gives the federal government jurisdiction in all criminal matters occurring on any civil aircraft that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States.

2. This affidavit is in support of a complaint charging KENJI OKAMOTO with a violation of Title 49, United States Code, Section 46504, Interference with Flight Crew Members and Attendants which occurred on May 17, 2014, while aboard Delta Air Lines flight 278, inbound from Osaka Kansai International Airport (KIX) to Honolulu International Airport (HNL).

3. The facts set forth in this affidavit are based on my personal observations, my training and experience, and the information obtained from other law enforcement officers, witnesses, and OKAMOTO himself. This statement is intended to show that there is probable cause for the violation and does not purport to set forth all of my knowledge of, or investigation into, this matter.

BACKGROUND

4. Title 49, United States Code, Section 46504 states, in pertinent part, "An individual on an aircraft in the special aircraft jurisdiction of the United States who, by assaulting or intimidating a flight crew member or flight attendant of the aircraft, interferes with the performance of the duties of the member or attendant or lessens the ability of the member or attendant to perform those duties, or attempts or conspires to do such an act, shall be fined

under title 18, imprisoned for not more than 20 years, or both."

5.   Title 49, United States Code, Section 46501(2)(D)(i) defines Special Aircraft Jurisdiction of the United States as including any aircraft in flight outside the United States that has its next scheduled destination or last place of departure in the United States, if the aircraft next lands in the United States.

6.   At the time of this incident, Delta Air Lines flight 278 was in the Special Aircraft Jurisdiction of the United States.  Delta Airlines flight 278 departed Osaka, Japan and arrived in Honolulu, Hawaii at approximately 10:30pm Hawaiian Aleutian Standard Time on May 17, 2014.  OKAMOTO was a passenger on Delta Air Lines flight 278.

SUMMARY OF PROBABLE CAUSE

7.   As I explain below, I believe that OKAMOTO violated Title 49, United States Code, Section 46504 by assaulting a member of the flight crew of Delta Air Lines flight 278, and interfering with the ability of the crew to perform their duties.

8.   On May 17, 2014, lead Flight Attendant J.M. was interviewed and stated, among other things, the following:

a. J.M. is currently employed as a flight attendant for Delta Air Lines (DAL) and is based in Honolulu, Hawaii. J.M. has been a flight attendant for approximately 23 years and was acting as Purser for DAL flight 278 on May 17, 2014, from Osaka Kansai International Airport (KIX) in Japan to Honolulu International Airport (HNL) in Hawaii.

b. The purser on board a flight is the lead flight attendant.

c. During the flight, J.M. and some of the other flight attendants noticed the passenger in seat 6G (further identified as OKAMOTO) had been requesting alcoholic beverages from multiple flight attendants, displayed erratic behavior and advised each other to watch OKAMOTO as OKAMOTO might be a problem.

4

d. Approximately two, to two and one half hours into the flight, J.M. was working in the galley near the door 2L when J.M. observed Flight Attendant K.S. backing up the right aisle of the business class section of the aircraft towards the front of the aircraft, while facing to the rear.  OKAMOTO was in the aisle advancing on K.S. and yelling.  K.S. had his hands raised in a defensive position while OKAMOTO advanced on K.S.  K.S. continued backing up the aisle into the forward galley and then backed towards door 1L where J.M., who had come up the left aisle, was able to get in between K.S. and OKAMOTO. J.M. attempted to converse with OKAMOTO in limited Japanese and also use K.S. as an interpreter in an effort to deescalate the situation.

e. J.M. was able to get OKAMOTO to back towards the right aisle while conversing with OKAMOTO in an attempt to get OKAMOTO to return to his seat.  As OKAMOTO was about to leave the forward galley area and move into the right aisle, OKAMOTO threw a roundhouse type punch at J.M. J.M. raised both of his arms to protect his head and OKAMOTO struck J.M. in his raised arms.  J.M. grabbed both of OKAMOTO's arms and tried to gain control of OKAMOTO's hands and pin OKAMOTO to the forward bulkhead of the forward galley.  J.M. called for help from other flight attendants and requested flexible restraints. During this time J.M. and OKAMOTO were engaged in a standing struggle as J.M. was attempting to restrain OKAMOTO.  J.M. believed that OKAMOTO was attempting to strike J.M. during this struggle.

f. The first attempt to put flexible handcuff restraining devices on OKAMOTO failed but J.M. succeeded on the second attempt.  After OKAMOTO was secured in the restraining devices, OKAMOTO was returned to seat 6G and remained compliant and apologetic for the remainder of the flight.

g. J.M. said that OKAMOTO's actions of assault and intimidation against himself and K.S. interfered with the performance of the duties of the flight attendants and lessened the ability of the flight attendants to perform their duties.  J.M. said that in all off the time he has been a flight attendant this was the most serious incident or altercation he has observed.

9. On May 17, 2014, Flight Attendant K.S. was interviewed and stated, among other things, the following:

a. K.S. is a flight attendant for Delta Airlines and was a flight attendant for Delta Air Lines flight 278 on May 17, 2014, from Osaka Kansai International Airport (KIX) in Japan to Honolulu International Airport (HNL) in Hawaii.

b. K.S. was asked by OKAMOTO if he would take his meal tray away since OKAMOTO was done eating. K.S. advised OKAMOTO that his hands were full, but he would be back to take his tray. K.S. shortly thereafter noticed that OKAMOTO stood up and was approaching the front of plane towards K.S. as if he was going to punch K.S. OKAMOTO was about to corner K.S. in the plane before another flight attendant, J.M., stepped in front of K.S. J.M. advised OKAMOTO that he needed to go back to his seat. OKAMOTO responded "Japanese" to J.M. and K.S. believes OKAMOTO was inferring that OKAMOTO did not speak English.

c. K.S. then saw OKAMOTO push J.M. with OKAMOTO's shoulder and then OKAMOTO and J.M. began to scuffle with one another. K.S. grabbed one of OKAMOTO's arms, while an unknown passenger grabbed OKAMOTO's other arm. At this time another airline employee requested for the "tough handcuffs." OKAMOTO continued to resist while airline personnel struggled to get the handcuffs on OKAMOTO. OKAMOTO was initially able to get out of the first set of handcuffs before J.M. was able to get the second set of handcuffs on OKAMOTO.

d. OKAMOTO was given an FAA advisory card after he was restrained. K.S. tried to give OKAMOTO the card previously, but OKAMOTO was too upset at the time. K.S. was fearful and intimidated by OKAMOTO and OKAMOTO's actions of assault and intimidation against the flight attendants interfered with the performance of the duties of the flight attendants and lessened the ability of the flight attendants to perform their duties. K.S. advised they didn't start their breaks until later due to OKAMOTO's actions. Additionally, flight attendant K.F. was required to be reassigned to first class where OKAMOTO was at due to the incident.

e. OKAMOTO was placed into his assigned seat, 6G after he was restrained. OKAMOTO complained the handcuff restraints were too tight and requested that they be loosened. J.M. then took the handcuff restraints off of OKAMOTO and put a third set of handcuff restraints on

OKAMOTO.  OKAMOTO apologized to J.M. after the incident and OKAMOTO was on the ground bowing, crying, and apologizing for his actions.  OKAMOTO was calm the rest of the time on the plane and fell asleep on the plane.

f. K.S. advised that prior to the assault, another flight attendant was serving OKAMOTO alcohol and had served him three or four glasses of wine and K.S. also served OKAMOTO one glass of wine.  K.S. heard from some of the other passengers that OKAMOTO was drinking before he boarded the flight.

10.     On May 17, 2014, K.B., who was the co-pilot, or First Officer, on Delta Air Lines flight 278 on May 17, 2014, from Osaka Kansai International Airport (KIX) in Japan to Honolulu International Airport (HNL) in Hawaii.

a. K.B. has been a pilot for Delta Airline for approximately 19 years.  She is based out of Seattle and was performing her duties as a First Officer for Delta Airlines flight 278 along with two other Delta Airlines pilots.

b. K.B. advised that she had been taking crew rest in seat 9A and was in the process of returning to the flight deck when she noticed two members of the Flight Attendant crew arguing with a passenger in the front galley area of the aircraft.  K.B. identified the two flight attendants as K.S. and lead flight attendant (Purser) J.M.  K.B. was later advised by other members of the flight crew that the passenger's name was KENJI OKAMOTO.  K.B. stated that she observed J.M. telling OKAMOTO to "calm down", "you cannot do this", and "don't touch me."  K.B. stated that she could not understand what OKAMOTO was saying and that it appeared that OKAMOTO did not speak English.

c. Shortly after the argument ensued, K.B. observed OKAMOTO lunging towards J.M. and pushing J.M. in the chest with his shoulder.  After being pushed by OKAMOTO, J.M. grabbed OKAMOTO and tried to subdue him.  K.B. stated that J.M. and OKAMOTO wrestled on their feet for a few moments until K.S., an unknown female flight attendant, and another Delta employee intervened.  K.B. heard J.M. request for someone to bring him a pair of "tough cuffs" to restrain OKAMOTO.  K.B. then raced to the middle galley area and called the captain from the galley telephone to advise him of the situation.  K.B. stated that when she returned to the front galley area, OKAMOTO was restrained and had been returned to his seat in first

class.  K.B. stated that after being restrained, OKAMOTO apologized for his actions by repeatedly saying "I'm sorry" and bowed down on his knees and placed his head on the floor.

d. K.B. stated that the incident occurred approximately two and a half hours after the flight departed Osaka.  K.B. added that she was standing approximately six feet away in the left side of the front galley area when she observed the altercation between OKAMOTO, K.S., and J.M. When K.B. returned to the flight deck she was advised by the other two pilots that Delta Airlines Dispatch had been notified of the incident.

11.   On May 17, 2014, Flight Attendant L.M. was  interviewed and stated, among other things, the following:

a. L.M. was working as a flight attendant on Delta Air Lines flight 278 on May 17, 2014, from Osaka Kansai International Airport (KIX) in Japan to Honolulu International Airport (HNL).  L.M. noticed the individual sitting in seat 6G (further identified as KENJI OKAMOTO) because of the attitude OKAMOTO displayed towards the flight attendants and the requests for alcoholic beverages that OKAMOTO made.

b. After clearing trays from a meal service, L.M., who was in the galley section between doors 2L and 2R observed flight attendant flight attendant K.S. go back to seat 6G to retrieve the last remaining tray from the business class section. While at seat 6G to remove the tray, K.S. began backing up the right aisle towards the forward galley with hands raised in a defensive position. OKAMOTO had left seat 6G and was advancing on K.S. while yelling at K.S. L.M. requested help from the other flight attendants for K.S. and went to the forward galley to assist. Upon arrival at the forward galley L.M. observed Purser J.M. attempting to put the flexible handcuff restraining devices on OKAMOTO.

c. L.M. closed the security gate leading to the cockpit and contacted the cockpit to alert the flight crew of what was happening via the intercom phone located in the forward galley.  L.M. locked the gate because OKAMOTO had attacked J.M. and L.M. wanted to ensure the security of the flight deck.  After J.M. had placed the restraining devices on OKAMOTO, OKAMOTO appeared to calm down,

8

returned to seat 6G and was compliant for the rest of the flight.

d. L.M. said that OKAMOTO's actions of assault and intimidation against the flight attendants interfered with the performance of the duties of the cabin crew. L.M. advised that had it not been for the actions of J.M. that one or more of the cabin crew would have been injured.

12.    On May 17, 2014 KENJI OKAMOTO was interviewed and stated, among other things, the following:

a. OKAMOTO was flying from Japan to Honolulu, Hawaii for his honeymoon. OKAMOTO's flight departed Japan at 10:00 PM on May 17, 2014, and OKAMOTO had been drinking since 5:00 PM earlier that day. Prior to boarding the plane OKAMOTO had already had four glasses of beer and one glass of wine. OKAMOTO continued drinking while on-board and had one glass of champagne and four glasses of wine. OKAMOTO believed he had these additional drinks within three hours of boarding the flight. OKAMOTO was intoxicated after having these drinks on the plane. OKAMOTO advised he was not currently intoxicated during the interview.

b. OKAMOTO rarely drinks and was drinking heavily because he was celebrating his honeymoon with his wife, M.O., that he married on April 20, 2014. OKAMOTO advised that the airline incident happened "like a flash." OKAMOTO did not clearly remember what exactly took place due to his intoxication, but remembers he was upset because he felt the flight attendant (known to investigation to be K.S.), disrespected him when K.S. told OKAMOTO that his two hands were full and he could not take his empty plate at the moment and therefore would come back later to take his plate. OKAMOTO felt this was disrespectful because OKAMOTO had a disability in his right foot due to something falling on his right foot at his construction job and also having his right foot ran over. OKAMOTO was in the hospital for a month and a half due to his foot injury and is currently handicapped due to this injury.

c. After K.S. advised OKAMOTO that he would have to wait to have his plate taken, OKAMOTO stood up from his seat and approached K.S. who was walking towards the front of his plane. OKAMOTO did not plan on having a physical altercation with K.S. and was only planning on complaining to K.S. for not taking his plate. OKAMOTO

9

advised a tall flight attendant (known to investigation to be J.M.) intervened between K.S. and OKAMOTO. J.M. began to walk towards OKAMOTO and therefore OKAMOTO initiated contact with J.M. by shoving him to get J.M. away from him. J.M. then pushed OKAMOTO and they began to struggle with one another while other individuals were trying to put handcuff restraints on OKAMOTO. OKAMOTO was resisting those individuals who were trying to put the handcuffs on him and believed it took between three and five minutes before he was fully restrained. OKAMOTO initially was able to get out of the handcuff restraints before airline personnel put a second set of handcuff restraints on him. OKAMOTO advised that as far as he remembers, he did not throw a punch and only shoved J.M.

d. OKAMOTO apologized to J.M. once he had cooled down and J.M. realized he was at fault for the incident. OKAMOTO advised he was very apologetic and was foolish for acting the way he did. OKAMOTO believes he became upset so easily because he was intoxicated from alcohol, but OKAMOTO does not know if this would have transpired if he was sober.

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

CONCLUSION

13.     Based on the foregoing, I believe there is probable cause
to find that KENJI OKAMOTO violated Title 49, United States
Code, Section 46504, Interference with Flight Crew Members
and Attendants.


                                    Necosie M. Wilson
                                    Special Agent - FBI



This Criminal Complaint and Agent's Affidavit in support thereof
were presented to, approved by, and probable cause to believe that
the defendant above-named committed the charged crime found to
exist by the undersigned Judicial Officer at 12:09 P.m. on May 18,
2014.




Subscribed and sworn to
before me, this 1st day
of May 2014.


BARRY M. KURREN
UNITED STATES MAGISTRATE JUDGE




                                11